2356

The STATE, Respondent v. Joseph Delmas FREEMAN
and Carroll L. Freeman, Appellants.
(459 S.E. (2d) 867)

Court of Appeals

---

112

*E.L. Clements, III*, Florence; *Edward E. Saleeby, Jr.*, Hartsville, both of *The Saleeby Law Firm; James I. Redfearn*, Chesterfield; and *South Carolina Office of Appellate Defense*, Columbia, *for appellants.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Charles W. Gambrell, Jr.*, and *Asst. Atty. Gen. Reginald J. Perry*, Columbia, *for respondent.*

Heard Mar. 9, 1995.

Decided June 12, 1995; Amend. & Ref. June 19, 1995.

CURETON, Judge:

Joseph Delmas Freeman and Carroll L. Freeman appeal their convictions for numerous marijuana trafficking, manufacturing, and distributing offenses.[1] They were both sentenced to mandatory twenty-five (25) year imprisonment plus a consecutive five (5) year term for manufacturing marijuana for a total of thirty (30) years. We reverse and remand for a new trial.

While off duty on August 11, 1991, Officer Jerry Allen Cox of the Darlington Police Department along with his brother and brother-in-law were checking for deer stands in the area of Coker Pond near the Darlington/Chesterfield County line. While canvassing this area, they came upon a field of marijuana. Later that night, Officer Cox notified Jerry Thompson of the Governor's RAID Team about the discovery. At approximately 9:00 a.m. on August 20, 1991, Officer Cox, Special Agent Thompson, and Officer Wayne Byrd of the Darlington Police Department returned to the Coker Pond area to investigate. Because the area is densely covered with large trees,

---

[1] The Appellants were both charged with various drug offenses in three separate indictments. The first indictment charged Joseph D. Freeman with three (3) counts of manufacturing marijuana and one (1) count of possession with intent to distribute marijuana. The second indictment charged Joseph D. Freeman and Carroll L. Freeman with four (4) counts of trafficking in marijuana and three (3) counts of manufacturing marijuana. The third indictment charged Carroll L. Freeman and Cheryl Dean Rivers with one (1) count of trafficking in marijuana and one (1) count of possession with intent to distribute marijuana. Joseph was found guilty of possession with intent to distribute marijuana from the first indictment and all counts in the second indictment. He was found not guilty of the three manufacturing counts in the first indictment. Carroll was found guilty of all counts against him.

vines, and underbrush, Officer Byrd led the way with a machete clearing a path for them to walk through. As they were approaching Coker Pond, Officer Byrd noticed two men squatting behind thick vines and bushes near the marijuana field. Officer Byrd testified he alerted the other two officers someone was ahead and then shouted "hold it," but the two men stood up and ran. The front fleeing man allegedly turned around as he stood up and looked directly at the officers before running. Officers Cox and Byrd later identified him as the Appellant, Joseph Delmas Freeman (Joseph).[2] The officers testified that Joseph was approximately 50 feet away from them when he stood up. Although the second suspect could not be positively identified, Officer Byrd testified the other man fit the general description of Appellant Carroll L. Freeman (Carroll), Joseph's younger brother. Neither of the fleeing men was apprehended.

Upon further investigation of the area, the officers found six patches of marijuana plants which were interconnected by man-made paths. Within the six patches, there was a total of 833 marijuana plants. At the entrance to one of the patches were several gardening tools and a trash bag allegedly three-quarters full of newly harvested marijuana leaves.[3] A 1978 Ford Thunderbird registered to Carroll was also found parked across Coker Pond on the Chesterfield County side. Based on these findings, search warrants were obtained on August 20, 1991 for the residences of both Joseph and Carroll Freeman. The search warrants were executed the following morning, on August 21, 1991.

In searching Joseph's residence, the officers found: (1) a clear plastic bag of marijuana located in the attic; (2) marijuana residue in several places including the trunk of a car, an equipment shed, and in two separate locations in a tobacco barn; and (3) three patches of marijuana plants in fields behind the house. At Carroll's residence, the officers found: (1) freshly harvested marijuana in four plastic trash bags some

[2] The officers recognized Joseph as a neighbor they both have known most of their lives.

[3] Additionally, several water hoses and a water pump were found on the path where the two men were squatting. A pitchfork, four-prong rake, hatchet, metal saw, two machetes and numerous buckets and jugs were discovered in and about the six patches of marijuana.

distance behind his home; (2) one-half pound of marijuana and residue in a storage building behind his home; and (3) a set of scales in the woods behind his home.[4]

Several witnesses also testified at trial regarding marijuana purchases they made from Joseph and Carroll. In their defense, Joseph and Carroll claimed alibis for the August 20th search of the woods. At the time he was purportedly seen in the marijuana field on August 20, 1991 at approximately 9:15 a.m., Carroll claims he was at home with his two-year-old daughter. Joseph was allegedly at Johnny's Truck Stop in Society Hill, S.C. between 8:00 a.m. and 8:30 a.m. and at the Milling Tobacco Warehouse in Darlington, S.C. between 8:45 a.m. and 9:45 a.m. He provided nine witnesses to prove the alibi.

Over Joseph's objection that the search warrant was defective since it was never executed as required by S.C. Code Ann. § 17-13-140 (1976), evidence was admitted at trial regarding eighteen separate items found at Joseph's residence and tested by S.L.E.D. chemist Carlotta Stackhouse. Stackhouse's report of her analysis of the seized items does not identify and weigh each item separately nor indicate the location where the item was found. Instead, it simply combines the weight of several different samples of evidence submitted for analysis. Of the eighteen items connected to Joseph, all but two tested positive as marijuana or residue.

Before the case went to the jury, Joseph again moved that all physical evidence found at his home be suppressed due to the State's failure to comply with the statutory requirements regarding the return to the search warrant. This motion was denied, and the jury found both defendants guilty of numerous counts of marijuana trafficking, manufacturing, and distribution. Both Joseph and Carroll appeal.

## I. Search Warrant

On appeal, Joseph first argues the search warrant was invalid because it was never properly executed and returned;

---

[4] At the time of the search of Carroll's home, his housemate, Cheryl Dean Rivers, stated the marijuana behind the residence belonged to her. She subsequently pled guilty to one count of trafficking in marijuana and in exchange all other charges against her were dismissed.

thus, the trial judge erred in admitting the evidence found at his residence. The State produced only a copy of the search warrant and a copy of the return which was not sworn to or signed by the issuing judge. The trial judge admitted the evidence over Joseph's objection, and ordered the State to produce the properly executed return at a later time. The record reveals, however, that this was never done. Nevertheless the trial court concluded:

> [I]t was properly issued, and it was issued by me. The original is not here. You introduced a copy of the search warrant, which is in the record and a copy of the return. You will note that that return is duly signed by—I think it was Mr. Eddie Gordon . . . [t]o the extent that it needs an endorsement by me, I'd do that at this time. Regardless of that, I do not think that the insufficiency of that signature at this time would preclude the jury's consideration of the evidence adduced by that search warrant. . . . Now the search warrant and the return speak for themselves. . . .

Relying on *State v. Wise*, 272 S.C. 384, 252 S.E. (2d) 294 (1979), the State maintains Joseph was not prejudiced by the use of a copy of the search warrant to substitute for the original. In *Wise*, the Supreme Court held that a warrant not returned to the issuing judge within ten (1) days as required by statute due to administrative error does not void an otherwise perfectly valid warrant in the absence of a showing of prejudice to the defendant.

Joseph's attack on the legality of the search warrant, however, is not limited to an assertion that the State failed to fulfill the ministerial requirement of returning the warrant to the issuing judge within the ten-day period prescribed by law. Rather, his challenge is more broadly based and encompasses, albeit in general terms, an assertion that the unsigned, unsworn copy of the return was never properly executed or completed and was therefore legally defective. Moreover, Joseph maintains there is no way to look at the copy of the return and match those items listed with the 18 different samples analyzed by Stackhouse. Therefore, Joseph asserts, the prejudice from the State's complete failure to produce the original search warrant and a signed, sworn return to it is

manifest error in light of the State's inability to link the items allegedly seized from his residence to Stackhouse's analysis of the 18 separate items.[5] We agree.

S.C. Code Ann. § 17-13-140 (1976) requires a warrant to be executed and returned within ten days after it is dated. Although the State contends and the trial judge ruled that the warrant was properly returned within ten days but the original was misplaced so a copy was allowed to be substituted, the record is simply devoid of sufficient information upon which to draw that conclusion. In the posture in which this record has reached us, there is no evidence that the return was ever made. As stated by a Maryland appellate court in *Giles v. State*, 271 A. (2d) 766, 767 (Md. App. 1970):

> A valid search warrant properly executed, may produce evidence sufficient to convict a person accused of a crime. A defective and invalid search warrant produces confusion, waste and injustice, to an accused or to society, or to both.

Here, as argued by counsel for Joseph, it is possible that the warrant was neither properly executed nor returned within the prescribed time, and is, thus, void. We think it is impossible for the trial judge to have determined, as a matter of law, that the search warrant was legally proper when he, the judge who issued the warrant, had no recollection of receiving or signing the original return, was never provided with a sufficient explanation concerning the location of the original warrant, and never had the opportunity to review the original return.[6] Whether the warrant was

---

[5] Defense counsel asked Officer Thompson on cross-examination to link the 18 samples analyzed by Stackhouse to the items seized from Joseph's residence, and he was unable to do so. Specifically, defense counsel asked him if the "list [Items Found At Joseph Freeman's Residence] show [sic] 18 different samples taken and attributed to [Joseph] Freeman's residence?" Officer Thompson responded, "[w]ell, it's not marked in numbers as 18, and I don't know if she's combined anything on here or not. . . . I don't know how she conducted her analysis, sir." Defense counsel also asked Special Agent Eddie Gordon "how Ms. Stackhouse could have gotten 18 different samples from that list [Items Found At Joseph Freeman's Residence]?" Gordon responded, "I don't know."

[6] It is true that the trial judge had the opportunity to review what was purported to be a 'copy' of the original warrant and return, and perhaps under proper circumstances that 'copy' could, by sufficient other secondary evidence, be held a proper substitute for the original. *See Campofreda v. Maryland*, 15 Md. App. 693, 292 A. (2d) 703 (1972).

lawful or not, of course, is a matter of law for the determination of the trial judge, a function which he manifestly cannot perform unless he reviews the warrant in light of the objections made to it, or if the warrant is shown to be unavailable for proper reasons, by considering secondary evidence of its existence and contents. *See Campofreda v. Maryland,* 15 Md. App. 693, 292 A. (2d) 703 (1972) (holding that absent sufficient explanation that the original search warrant was lost or destroyed, it was improper to accept a 'copy' in lieu of the original and failure of the State to produce the original warrant for the trial court's review violated rights of the defendant who sought to quash the warrant and suppress evidence obtained thereunder).

There was no testimony taken to establish that the original warrant was lost or destroyed. Instead, counsel for the State told the judge, "my understanding is Johnny Quick made a return to the judge, and that satisfies that requirement." In response to the trial judge's inquiry concerning the location of the original warrant and return, Special Agent Eddie Gordon indicated, "[j]udge if it's yours, Your Honor, I turned it in to the Clerk of Court, if that's where you instructed us to turn in—." The State cannot overcome a challenge to a search warrant by simply proclaiming it was lawful. This is certainly insufficient to elevate a copy of a search warrant with an unsworn, unsigned copy of the return to the status of an original warrant.

Under these circumstances, we find it apparent that Joseph's rights have been violated by the failure of the State to produce the original warrant and return for the trial court's review. We further find that the prejudice to Joseph was compounded when 18 different samples of marijuana were placed into evidence and attributed to him with no showing that those items matched the items listed on the unsigned, unsworn return. Thus, exclusion of evidence obtained under this defective warrant is appropriate.[7] *See State v. McKnight,* 291

---

[7] When a search warrant is defective under § 17-13-140, each of the defendants against whom seized evidence is offered has standing to object to the validity of the search. *State v. McKnight,* 291 S.C. 110, 352 S.E. (2d) 471 (1987). Thus, our ruling on this issue applies to both Joseph and Carroll since Carroll incorporated and adopted by reference Joseph's brief.

S.C. 110, 352 S.E. (2d) 471 (1987) (holding when the State is unable to demonstrate a good-faith attempt to comply with the statute authorizing the issuance, execution and return of search warrants, S.C. Code Ann. § 17-13-140, exclusion is the proper remedy). However, it may well be that on a retrial of this case the State will produce the original warrant.

## II. *State's Failure to Disclose*

Joseph and Carroll next argue the State's failure to produce certain evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963) warrants reversal. The State neglected to produce Officer Cox's brother and brother-in-law as potential witnesses, and failed to produce specifically requested notes from interviews with the alibi witnesses.

Pursuant to *Brady,* the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *See also Duncan v. State*, 281 S.C. 435, 315 S.E. (2d) 809 (1984). Reversal of a conviction, however, is required only if the undisclosed evidence is material and the omission deprived the defendant of a fair trial. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. (2d) 342 (1976). In defining materiality, the United States Supreme Court stated:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated *in the context of the entire record.* If there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, *additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.*

*Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401; *see also State v. Gathers*, 295 S.C. 476, 369 S.E. (2d) 140 (1988).

The State maintains that Officer Cox's brothers' presence in the marijuana field was not revealed to the defense because Officer Cox did not want his brothers involved, and he viewed their participation as insignificant. The State further claims their presence was not relevant to any issue to be proved at trial and thus failure to disclose this information before trial did not prejudice Joseph and Carroll. As relates to the State's failure to turn over specifically requested notes from their interviews of Joseph's and Carroll's alibi witnesses, the State maintains there was no significant information received to generate a report. At any rate, the State argues, the statements taken from the potential alibi witnesses were not discoverable because they were not part of the State's case in chief. Therefore, no prejudice was incurred by Joseph and Carroll for not receiving information to which they were not entitled.

In response, Joseph and Carroll argue the withheld information could have been used to impeach the State's witnesses' credibility and the information was therefore favorable to them under *Brady*. Citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed. (2d) 347 (1974), Joseph and Carroll contend the failure to disclose impeachment evidence is worse than failure to disclose exculpatory evidence. They claim they were extremely prejudiced by the intentional withholding of information until the first day of trial regarding Officer Cox's brothers' presence in the marijuana patch because they were prevented from obtaining impeachment evidence of critical witnesses. Because the State's evidence was questionable in several particulars, Joseph and Carroll insist that an opportunity to investigate Officer Cox's brothers' knowledge about the marijuana patch could have created a reasonable doubt about their guilt. Furthermore, Joseph and Carroll claim that the State's failure to permit them to examine the notes from interviews with the alibi witnesses was not in compliance with the specific request made for this information. They fail, however, to articulate the prejudice which resulted from this omission.

The trial judge concluded (1) Officer Cox's brothers had no significant role in this case since they were not called as witnesses by the State or defense, and they were not present on

the incident date, and (2) the statements taken from the potential alibi witnesses were not discoverable because they were not part of the State's case in chief.

We find no indication that Joseph's and Carroll's right to a fair trial was abridged by the failure to disclose the presence of Officer Cox's brothers when the marijuana field was discovered on August 11, 1991. *Brady* requires the State to disclose evidence in its possession which is favorable to the accused and material either to guilt or punishment. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-110, 96 S.Ct. at 2400-01. The constitutional standard of materiality is met only "if the omitted evidence creates a reasonable doubt that did not otherwise exist. *Id.* at 112, 96 S.Ct. at 2401-02. Officer Cox's brothers were not present on the day Joseph and Carroll were allegedly spotted in the marijuana field, they did not testify at trial, and information concerning their presence in the marijuana field was revealed the first day of trial during the testimony of the first witness. Thus, the nondisclosure of their presence was not a violation of *Brady* since it was not significant and did not create a reasonable doubt about Carroll's and Joseph's guilt that did not otherwise exist.

We find no merit to Joseph's and Carroll's contention that given the opportunity to investigate Officer Cox's brothers' knowledge about the marijuana field and their prior presence there, they could have uncovered evidence which might have been useful to impeach the credibility of the State's witnesses. While we agree that the reliability of a given witness may well be determinative of guilt or innocence, *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed. (2d) 104 (1972), there is no indication in the record before us that Officer Cox's brothers possessed any exculpatory or material information which would have aided Joseph and Carroll, and to so hold would be mere speculation. We agree with the trial judge that Officer Cox's brothers had no significant role in this case, and thus, Joseph and Carroll have failed to meet the *Brady* standard of materiality as relates to this issue.

We find the record before this court is inadequate to determine whether the undisclosed notes of Officer Thompson's in-

terviews of the alibi witnesses were 'material' or of sufficient significance to result in the deprivation of a fair trial. The record on appeal contains neither the testimony of the alibi witnesses, the testimony of any State witness commenting on the alibi witnesses, nor the reply case of the State concerning the alibi witnesses. Furthermore, the notes objected to were not made part of the record on appeal. The burden is on the appellant to furnish a sufficient record on appeal from which this court can make an intelligent review. *Windham v. Honeycutt*, 290 S.C. 60, 348 S.E. (2d) 185 (Ct. App. 1986). This court will not consider facts that do not appear in the transcript of record. *Id.* Necessarily, Joseph's and Carroll's *Brady* argument fails as to the undisclosed notes because based on this record before us, they can show no prejudice caused by the State's failure to comply with the discovery request. *See State v. Wilkins*, 310 S.C. 81, 425 S.E. (2d) 68 (Ct. App. 1992).

### III. *Newly Discovered Evidence*

Joseph further argues the trial judge erred in denying his motion for a new trial based on newly discovered evidence. We disagree.

Joseph contends his attorney called the State's attorney and informed the State he received information the day after the verdict regarding a man in the marijuana patch identified as someone other than Joseph Freeman. Counsel for the State allegedly replied "Oh, you mean Marvin Walters." Marvin Walters was also seen in the vicinity of Coker Pond the morning Joseph was identified fleeing the area by two local police officers. Officers questioned Walters. Walters testified before the State Grand Jury and denied being near the pond on the morning in question. His testimony was released in discovery to Joseph's counsel.

The trial judge denied the motion stating the after-discovered evidence could have been obtained by the exercise of due diligence as the allegation was included in the discovery package.

A motion for a new trial based on after-discovered evidence is addressed to the sound discretion of the trial judge. *State v. Irvin*, 270 S.C. 539, 243 S.E. (2d) 195 (1978). Absent error of law or abuse of discretion, this court will not disturb the trial judge's judgment. *State v. De Angelis*, 256 S.C. 364, 182 S.E.

(2d) 732 (1971); *State v. Deese*, 266 S.C. 534, 225 S.E. (2d) 175 (1976). A party requesting a new trial based on after-discovered evidence must show that the evidence: 1) is such as would probably change the result if a new trial was had; 2) has been discovered since the trial; 3) could not by the exercise of due negligence have been discovered before the trial; 4) is material to the issue of guilt or innocence; and 5) is not merely cumulative or impeaching. *Hayden v. State*, 278 S.C. 610, 299 S.E. (2d) 854 (1983). Because Walters' testimony before the State Grand Jury was released to Joseph's counsel prior to the trial, Joseph fails to meet the requirement that the evidence could not have been discovered by the exercise of due diligence. Thus, we affirm the judge's denial of Joseph's motion for a new trial.

### IV. *Conduct of the Trial Judge*

Carroll incorporated by reference Joseph's brief and ▮▮▮▮▮ raises two additional issues. First, he argues the interruptions, opinions, and comments of the trial judge in the presence of the jury were so prejudicial to him as to deprive him of a fair and impartial trial. In support of this contention, he points to 14 different instances where the trial judge interrupted, made unsolicited comments, interjected his opinion, or arbitrarily limited cross-examination of the State's investigating officers. After a careful review of the record, we find the combined effect of the numerous unsolicited comments and the limitation of cross-examination unduly prejudiced Carroll.

Although each point of error raised alone is insufficient to warrant a new trial, the cumulative effect is enough to require that relief. *See Myers v. Moffett*, 312 S.W. (2d) 59, 65 (1958) (conduct of counsel of defendant in interrogation of witnesses and in argument to jury affected trial in such a way as to have substantial, prejudicial influence on verdict, so as to justify granting a new trial); *see also Ryan v. United Parcel Service*, 205 F. (2d) 362, 365 (1953) (although perhaps no one of the errors standing alone would call for reversal, in their totality they do). We are aware that every instance of trial error does not entitle an appellant to prevail on appeal. However, the aggregation of errors may produce a cumulative effect of prejudice, where individually, the prejudice is insufficient to justify reversal. In

their totality, the cumulative effect of the lack of latitude allowed the defense in cross-examining the State's investigating officers along with the court's comments, unfairly prejudiced the defense and necessitates the convictions be set aside.

## V. *Separate Trials*

Carroll also argues the trial judge's denial of a motion for separate trials unduly prejudiced him and deprived him of a fair trial. We disagree. A motion for a separate trial is addressed to the discretion of the trial court. *State v. Boys,* 302 S.C. 545, 397 S.E. (2d) 529 (1990). Absent a showing of abuse of discretion, this court will not disturb the trial court's ruling on appeal. *State v. Thompson,* 279 S.C. 405, 308 S.E. (2d) 364 (1983). For reversal, a defendant who was tried jointly must show prejudice. *Id.* Carroll has not met that burden here.

Carroll argues there was not a sufficient nexus between the indictments to warrant a joint trial. However, Carroll and Joseph were tried for the cultivation of the marijuana patches at Coker Pond in addition to their separate trafficking, possession, and distribution charges. The joint venture of raising and cultivating the marijuana provided a sufficient nexus to try them jointly. Thus, we hold the trial court properly denied Carroll's motion for severance.

Nevertheless, having found the search warrant invalid and the conduct of the trial judge prejudicially affected the fairness of the trial, we reverse and remand for a new trial.

Reversed and remanded.

HOWELL, C.J., and CONNOR, J., concur.