602 S.E.2d 786

The STATE, Respondent,

v.

Levell WEAVER, Appellant.

No. 3864.

Court of Appeals of South Carolina.

Heard June 9, 2004.

Decided Sept. 7, 2004.

Rehearing Denied Nov. 18, 2004.

76

Assistant Appellate Defender, Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry·Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Donald J. Zelenka, and Assistant Attorney General, Derrick K. McFarland, all of Columbia; and Solicitor Cecil Kelley Jackson, of Sumter, for Respondent.

CURETON, A.J.:

Levell Weaver appeals his convictions for murder and possession of a weapon during the commission of a crime of violence. Weaver contends the trial court erred in: (1) admitting evidence obtained pursuant to a procedurally defective warrant; (2) admitting hearsay testimony; and (3) declining to grant a mistrial based on inappropriate prosecutorial comment on Weaver's decision not to testify during the trial. We affirm.

## FACTS

At approximately 10:00 p.m. on June 23, 1999, Marion Dwayne McKnight was shot thirteen times while outside a club called Rob's Place in Hemingway, South Carolina. At the time of the shooting, McKnight was getting into his car with Antonio Brown and Tracy Scott. After the shooting, Scott contacted his mother, Loretta, who drove to the club. When she arrived she saw Weaver covered in blood, standing over McKnight's body that had been stripped to its underwear.

Investigator Sandy Thompson, with the Williamsburg County Sheriff's Department, was called around 11:00 p.m. to investigate the incident. Leroy Powell, who witnessed the shooting, identified Weaver as the shooter. Investigator Thompson interviewed other witnesses and spoke with investigators at the scene who informed him that Weaver was a suspect and that he left the scene driving a green Jeep. Upon further investigation, the officers discovered that Weaver was at his cousin's house. Investigator Thompson then left for the residence accompanied by Investigator Collins and several other officers. At the home, the officers spoke with Weaver's cousin, Arnold Weaver. He confirmed Weaver arrived driving a green Jeep and told them Weaver had asked for bleach, a trash bag, and a change of clothes.

After the discussion with Weaver's cousin, officers found the Jeep in the backyard. When Investigator Thompson opened the driver's side door, he noticed the Jeep's back area was wet

and smelled of bleach. On a pump house near the Jeep, Investigator Thompson also discovered a bag containing a towel and some socks which smelled of bleach. To preserve the evidence for investigation, the officers seized the bag and towed the Jeep to an impoundment area. During the early morning hours of June 24, 1999, Weaver turned himself in at the Williamsburg County Jail.

After the Jeep was impounded, Lieutenant Ricky Weston requested and obtained a search warrant. Though the police searched the impounded vehicle after the warrant was issued, no return of the warrant was made.

SLED Agent Steve Lambert processed the vehicle and collected samples of blood evidence from the Jeep and the decedent's vehicle. During the search, Agent Lambert found a cloth with blood evidence on the back seat of the Jeep. As part of the investigation, Lambert analyzed a pair of underwear that contained blood evidence. Agent Lambert received this evidence from Investigator Dennis Parrott who identified the underwear as belonging to Weaver. Investigator Parrott also turned over the bag of clothing that was seized from the pump house near the Jeep. DNA testing of the evidence revealed that all of the samples matched the decedent's blood type.

A Williamsburg County grand jury indicted Weaver for murder, armed robbery, and possession of a weapon during a violent crime. Before trial, Weaver's counsel filed a motion to suppress evidence taken from the Jeep on two primary grounds: (1) the Jeep was seized without a warrant; and (2) no return was made to the search warrant as required by South Carolina Code section 17–13–140. The trial court made a preliminary ruling denying the motion to suppress.

During trial, Weaver's counsel renewed his motion. After hearing testimony and arguments, the court gave a final ruling denying the motion to suppress. As a threshold matter, the court found Weaver had standing to challenge the legitimacy of the search even though he was not the owner of the vehicle. The court then concluded a search warrant was not necessary because the State had probable cause to seize the vehicle and to conduct the subsequent search. The court reasoned the warrantless search was permissible based on the automobile

exception to the Fourth Amendment. As a result, the court found an analysis of the statutory provisions of section 17–13–140 was unnecessary.

The jury found Weaver guilty of murder and possession of a weapon during the commission of a crime of violence. The trial court sentenced Weaver to thirty years imprisonment for murder and a concurrent five-year sentence for the weapon charge. This appeal follows.

## DISCUSSION

### I.

Weaver contends the trial court erred in denying his motion to suppress the evidence seized from the Jeep. Specifically, he asserts the court erred in finding that a search warrant was not necessary. Moreover, because a warrant was required, Weaver claims the failure to file a return as mandated by section 17–13–140 invalidated the search, and thus, required the suppression of the evidence.

"On appeal from a suppression hearing, this court is bound by the circuit court's factual findings if any evidence supports the findings." *State v. Abdullah*, 357 S.C. 344, 349, 592 S.E.2d 344, 347 (Ct.App.2004). "In an appeal from a motion to suppress evidence based on Fourth Amendment grounds, an appellate court may conduct its own review of the record to determine whether the evidence supports the circuit court's decision." *Id.* at 349–50, 592 S.E.2d at 347.

Section 17–13–140 requires search warrants to be executed and return made within ten days after the date of the warrant:

Any warrant issued hereunder shall be executed and return made only within ten days after it is dated. The officer executing the warrant shall make and deliver a signed inventory of any articles seized by virtue of the warrant, which shall be delivered to the judicial officer to whom the return is to be made, and if a copy of the inventory is demanded by the person from whose person or premises the property is taken, a copy of the inventory shall be delivered to him.

S.C.Code Ann. § 17–13–140 (2003).

■ Failure to observe the ten-day requirement for execution and return under section 17–13–140 does not necessarily

void the warrant. *State v. Wise*, 272 S.C. 384, 386, 252 S.E.2d 294, 295 (1979) (holding the ten-day requirement was ministerial and the defendant failed to show he was prejudiced by the delay). Because the statute's return requirement is ministerial in nature, any purported noncompliance only provides grounds for exclusion upon a showing of prejudice. *State v. Mollison*, 319 S.C. 41, 47, 459 S.E.2d 88, 92 (Ct.App.1995). In at least one case, this court has excluded evidence based on the provisions of section 17–13–140. *State v. Freeman*, 319 S.C. 110, 459 S.E.2d 867 (Ct.App.1995). In *Freeman*, we found that drug evidence should have been excluded under a defective warrant where the State failed to produce the original warrant and a signed, sworn return. We concluded the defendant was prejudiced by this failure given he was unable to review the return and match the items listed with the items that were analyzed and admitted into evidence. *Id.* at 116–19, 459 S.E.2d at 871–72.

■ Here, the police searched and seized the Jeep prior to obtaining the warrant that Weaver contends was rendered faulty by virtue of noncompliance with the statute's return requirement. We agree with Weaver that the State's failure to produce a return constituted more than a ministerial error. However, as will be discussed, any error in failing to file a return did not require the suppression of the evidence. Under the specific facts of this case, a warrant was not necessary to search and seize the Jeep.

■ The Fourth Amendment guarantees "[t]he right of the people to be secure ... [from] unreasonable searches and seizures." U.S. Const. amend. IV. "In parallel with the protection of the Fourth Amendment, the South Carolina Constitution also provides a safeguard against unlawful searches and seizures." *State v. Forrester*, 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001); S.C. Const. art. I, § 10. Evidence obtained in violation of the Fourth Amendment is inadmissible in both state and federal court. *Forrester*, 343 S.C. at 643, 541 S.E.2d at 840.

■ "Generally, a warrantless search is per se unreasonable and thus violative of the Fourth Amendment's prohibition against unreasonable searches and seizures." *State v. Bultron*, 318 S.C. 323, 331, 457 S.E.2d 616, 621 (Ct.App.1995).

"However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule." *Id.* at 331–32, 457 S.E.2d at 621. These exceptions include: (1) search incident to a lawful arrest; (2) "hot pursuit;" (3) stop and frisk; (4) automobile exception; (5) "plain view" doctrine; (6) consent; and (7) abandonment. *State v. Dupree,* 319 S.C. 454, 456–57, 462 S.E.2d 279, 281 (1995), *cert. denied,* 516 U.S. 1131, 116 S.Ct. 951, 133 L.Ed.2d 875 (1996). "The burden of establishing probable cause as well as the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures is upon the prosecution." *Bultron,* 318 S.C. at 332, 457 S.E.2d at 621.

Our supreme court analyzed the automobile exception in *State v. Cox,* 290 S.C. 489, 351 S.E.2d 570 (1986). In *Cox,* the court stated:

> The automobile exception was first articulated in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Since *Carroll,* the doctrine has been applied on a case-by-case basis to various sets of facts.
>
> The two bases for the exception are: (1) the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained; and (2) the lessened expectation of privacy in motor vehicles which are subject to governmental regulation.

*Id.* at 491, 351 S.E.2d at 571 (citations omitted). In view of these reasons, the court found that "under the automobile exception, probable cause *alone* is sufficient to justify a warrantless search." *Id.* at 492, 351 S.E.2d at 571–72 (citing *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)). Thus, "the inherent mobility of automobiles provides the requisite exigency." *Id.* at 492, 351 S.E.2d at 572.

In this case, the State met its burden to prove probable cause and the existence of circumstances to support the warrantless search under the automobile exception. During their investigation at the crime scene, the officers established that: (1) Weaver was a suspect; (2) he had been seen driving a green Jeep; and (3) there most likely would be blood evidence

in the Jeep if in fact Weaver had been involved in the shooting. Additionally, once the officers arrived at Weaver's cousin's home, they discovered that Weaver had asked for a change of clothing, a trash bag, and bleach. Upon further investigation, the officers found a bag of "wash clothes" near the Jeep that smelled of bleach and the inside of the Jeep was wet with bleach. Thus, based on probable cause that the automobile contained evidence of a crime, and the necessity to preserve the potential blood evidence, the warrantless search and subsequent seizure did not violate the Fourth Amendment. *See Cox*, 290 S.C. at 492, 351 S.E.2d at 572 (holding automobile exception applied to shotgun seized from trunk of vehicle parked at defendant's home); *State v. Peters*, 271 S.C. 498, 501, 248 S.E.2d 475, 477 (1978) (finding probable cause existed to conduct warrantless search of vehicle based on *Carroll* doctrine where police stopped vehicle after receiving information from confidential informant that defendant was driving vehicle containing marijuana); *State v. Hayden*, 268 S.C. 214, 218, 232 S.E.2d 889, 891 (1977) (holding probable cause and exigent circumstances justified warrantless search of automobile where officers received information from an informant that defendants would be traveling in a vehicle containing illegal drugs and due to the lateness of the hour it would have been impractical to get a search warrant); *State v. Frank*, 262 S.C. 526, 531–33, 205 S.E.2d 827, 830 (1974) (concluding warrantless search of automobile was proper where officer had strong reasons to believe that the automobile was being used in criminal activity and that it very probably contained stolen goods); *see also Robinson v. State*, 18 Md.App. 678, 308 A.2d 734, 739–40 (1973) (outlining cases holding exigency existed for the search of a vehicle and then removal to police garage).

█ The question then becomes whether the warrantless search of the Jeep after it was impounded was permissible under the Fourth Amendment. Because the Jeep was at that point immobilized, Weaver asserts that a warrant was required because the exigent circumstances of the mobility of the Jeep were no longer present.

Although there are no South Carolina cases directly on point, the case law from the United States Supreme Court and other jurisdictions supports the admissibility of this evidence

despite the lack of a warrant. These cases stand for the proposition that if there is probable cause to search a vehicle at the time it is seized this rationale does not disappear merely because the vehicle is taken into police custody. Because a subsequent search would be part of an ongoing criminal investigation, a warrant would not be required. *See, e.g., United States v. Johns,* 469 U.S. 478, 487, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (holding warrantless search of packages seized three days earlier from trucks which were suspected of being involved in drug smuggling operation was not unreasonable); *Florida v. Meyers,* 466 U.S. 380, 382, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (finding warrantless search of automobile impounded and in police custody conducted approximately eight hours after valid initial search at the time of defendant's arrest was proper); *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) ("It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized."); *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (concluding officers had probable cause to conduct second search of automobile at station house); *Rabadi v. State,* 541 N.E.2d 271, 275 (Ind.1989) ("Where there is probable cause to believe that a vehicle was used in the commission of a crime and contains evidence, a search of the impounded vehicle may be conducted after the arrest at the police station.").

Turning to the facts of the instant case, the State offered evidence that the Jeep was linked to the crime scene and contained evidence when it was impounded. Thus, there was sufficient evidence to support a finding that the officers had probable cause to conduct a warrantless search of the vehicle less than a day after it was impounded. *See Ex parte Boyd,* 542 So.2d 1276, 1284–86 (Ala.1989), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989) (holding warrantless search of defendant's automobile four days after impoundment was permissible under requirements of Fourth Amendment and state constitution where officers had probable cause to search vehicle when it was impounded and that probable cause continued between the time of the impoundment and the search); *Robinson v. State,* 18 Md.App. 678, 308 A.2d 734, 740–41 (1973) (finding officers' decision to scrape carbon residue from tailpipe of defendant's vehicle at impoundment lot

without a warrant was permissible where officers had probable cause to believe defendant was involved in double murder case and similar carbon residue was found at the crime scene). Moreover, the case law in our state appears to support the admissibility of the evidence. *Cf. State v. Lemacks,* 275 S.C. 181, 183–84, 268 S.E.2d 285, 286 (1980) (holding police officers were justified in impounding and conducting inventory search which extended to the trunk of the vehicle where vehicle was abandoned and believed to contain stolen goods).

 As a consequence, even if a procedural defect marred the later-acquired warrant, a subsequent failing cannot retroactively undermine the admissibility of previously acquired evidence. Because all the evidence acquired from the Jeep fits within the purview of the automobile exception, Weaver cannot show he was prejudiced by the failure to comply with the ten-day return requirement. Thus, the trial court properly admitted the evidence.

Despite the applicability of the automobile exception, Weaver contends the evidence should have been excluded because Article I, section 10 of the South Carolina Constitution afforded him greater protection. Although we agree with Weaver that our state constitution may provide greater protection against unreasonable searches and seizures and unreasonable invasions of privacy, our decision in no way violates or diminishes this protection. *See State v. Forrester,* 343 S.C. 637, 644, 541 S.E.2d 837, 840 (2001). ("[T]his Court can interpret the state protection against unreasonable searches and seizures in such a way as to provide greater protection than the federal Constitution."). In analyzing the automobile exception in this case, we have not blindly applied the exception as a blanket provision for the admissibility of evidence. Instead, we have adhered to the probable cause requirement established by our case law that inherently provides protection against unreasonable searches and seizures as well as unreasonable invasions of privacy. *See California v. Carney,* 471 U.S. 386, 394, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (The two requirements for the application of the automobile exception "ensure that law enforcement officials are not unnecessarily hamstrung in their efforts to detect and prosecute criminal activity, and that the legitimate privacy interests of the public are protected."); *State v. LeJeune,* 276 Ga. 179, 576 S.E.2d 888, 892 (2003)

("[T]he 'automobile exception' cases do not hold that a search warrant is *never* needed to search a car. There is an automobile exception to the search warrant requirement, not an exemption. Otherwise, the Supreme Court of the United States would have held that the police would not, under any circumstances, need to obtain a search warrant for an automobile, provided they have probable cause for the search.").

## II.

 Weaver asserts the trial court erred in admitting the testimony of Lieutenant Ricky Weston that "all of the evidence led to" or pointed to Weaver. Because this testimony was based on what witnesses told Lieutenant Weston, Weaver contends it constituted inadmissible hearsay.

During the State's redirect examination of Lieutenant Weston, the following exchange took place:

Solicitor: Did—Let me ask you this, Lieutenant Weston. Why didn't you do gunshot residue tests on these other people?

Weston: Well, all evidence that the people they interviewed there at Rob's Place—

Defense counsel: I'll object to what these people said, Your Honor.

Court: All right. I'm going to sustain it as such because you did ask him the question, so he can give a reason without saying what the people told you. You can say what his investigation revealed. Thank you.

Weston: All the evidence led to Levell Weaver. I didn't see no blood stain on none of the witnesses that I was talking to at that table. All of the witnesses that I talked to led me to believe that—

Defense Counsel: I'll object to that, Your Honor.

Court: Overruled.

Weston: Led me to believe that the subject that we were looking for was the only suspect that really was involved with doing the killing at this crime scene, and I didn't see no reason to take swabs from those subjects at that table.

 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "The rule against hearsay prohibits the admission of evidence of an out-of-court statement to prove the truth of the matter asserted unless an exception to the rule applies." *Simpkins v. State*, 303 S.C. 364, 367, 401 S.E.2d 142, 143 (1991); Rule 803, SCRE.

For several reasons we find no error in the admission of the above testimony. First, Lieutenant Weston never repeated statements made to him by individuals at the crime scene. Rather, he testified only to the conclusions he made based on what his investigation had thus far revealed. Second, this testimony was in response to the questions asked on cross-examination as to why Lieutenant Weston did not perform a gunshot residue test on everyone at the crime scene. Lieutenant Weston's testimony was offered to explain this part of his investigation. *See State v. Brown*, 317 S.C. 55, 63, 451 S.E.2d 888, 893–94 (1994) (finding officers' statements explaining why they began their surveillance of defendant's apartment were not hearsay); *State v. Thompson*, 352 S.C. 552, 558, 575 S.E.2d 77, 81 (Ct.App.2003) (" '[A]n out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken.' " (quoting *Brown*, 317 S.C. at 63, 451 S.E.2d at 894)). Furthermore, Lieutenant Weston did not testify to any specific statements that identified Weaver.[1] *Cf. German v. State*,

---

1. At oral argument, Weaver's appellate counsel asserted this issue was controlled by a recent United States Supreme Court case. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the defendant was convicted of first-degree assault with a deadly weapon despite his claim of self-defense. At trial, a tape-recorded statement of defendant's wife to police officers, in which she implicated her husband in the stabbing, was admitted at trial even though wife did not testify based on the spousal privilege. In offering this statement into evidence, the State relied on the hearsay exception for statements against penal interest. *Id.* at 1358. The Supreme Court reversed the defendant's conviction, finding the admission of wife's testimonial statement violated the Confrontation Clause of the Sixth Amendment. Even though there was an indication of reliability to such statement and it fell within a hearsay exception, the Court believed such statement could only be admitted if the witness was declared unavailable and the defendant had an opportunity to cross-examine the witness prior to trial. *Id.* at 1374.

Even if a Confrontation Clause argument was implicit in Weaver's counsel's objection, the facts of this case are decidedly different than

325 S.C. 25, 27–28, 478 S.E.2d 687, 688–89 (1996) (holding testimony of undercover drug agent regarding tips that defendant was selling drugs and description of defendant were inadmissible hearsay given the statements specifically referred to defendant). Because this testimony did not constitute hearsay, the trial court did not abuse its discretion in admitting it. *See State v. Tucker,* 319 S.C. 425, 428, 462 S.E.2d 263, 265 (1995), *cert. denied,* 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996) (stating the admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion).

■ We also note the testimony is cumulative to that given by Investigator Thompson to which Lee made no objection: "Upon talking to all of those people, gathered information that we gathered, myself along with Investigator Collins started looking for Mr. Levell Weaver." Furthermore, Leroy Powell, an eyewitness to the shooting, testified Weaver was the shooter. Thus, even if the testimony constituted hearsay, any error in its admission would be harmless. *See State v. Haselden,* 353 S.C. 190, 197, 577 S.E.2d 445, 448–49 (2003) (stating the admission of improper evidence is harmless where the evidence is merely cumulative to other unobjected-to evidence); *State v. Kirby,* 325 S.C. 390, 396–97, 481 S.E.2d 150, 153 (Ct.App.1996) (finding even if officer's testimony regarding information radioed by the police dispatcher constituted hearsay, its admission was harmless given it was cumulative to similar testimony that was admitted without objection).

### III.

■ Weaver argues the trial court erred in not granting a mistrial based on the solicitor's closing argument. He contends the solicitor impermissibly commented on his right to not testify.

---

those in *Crawford.* As previously stated, Lieutenant Weston did not repeat specific statements of witnesses that implicated Weaver as a suspect. Moreover, two of the witnesses, Loretta Scott and Leroy Powell, who identified Weaver as a suspect, testified at trial and were cross-examined by Weaver's counsel. Therefore, we do not believe *Crawford* is dispositive.

Weaver did not testify during the trial. During closing argument, Weaver's counsel asked the jury why Weaver would have remained at the scene if he had, in fact, shot the victim: "If hearing [Leroy Powell's] testimony and then [sic] believe his testimony, Levell shot a fellow some 13 times and stayed there until later, does that have the ring of truthfulness to it? Ask yourselves those questions."

During his closing argument, the solicitor suggested only Weaver could properly provide an answer to the question posited by his trial counsel:

He was laying there and Levell Weaver was standing down near him or over him she said. He had the gun in his hand and he had blood on him. Now, I can't explain to you why Levell Weaver was there.

That's one of the things [Weaver's counsel] said, why would Levell Weaver stay around there all that time. Nobody can tell you that except Levell Weaver.

I can't say why somebody would do something, but we know he was there because Ronald Williams said that he went out there a couple of minutes after the thing, after the shooting occurred, he went out the door.

Weaver's counsel objected to the argument, contending the solicitor impermissibly commented on Weaver's decision to not testify during the trial. After a bench conference, the trial court gave a curative instruction, charging the jury the State must prove guilt beyond a reasonable doubt and that a defendant has an absolute right to remain silent, which cannot be considered against him if exercised.

■■■ "The trial court has broad discretion when dealing with the propriety of the solicitor's argument, including the question of whether to grant a defendant's mistrial motion." *State v. Copeland*, 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996). "The trial court's discretion will not be overturned absent a showing of an abuse of discretion amounting to an error of law that prejudices the defendant." *Id.*

■■■ Under the United States and South Carolina Constitutions, a criminal defendant has a right to remain silent and to not testify during his trial. U.S. Const. amend. V; S.C. Const. art. I, § 12. As a corollary of this right, a

prosecutorial comment, whether direct or indirect, upon a defendant's failure to testify at trial is constitutionally impermissible. *State v. Graddick*, 345 S.C. 383, 387, 548 S.E.2d 210, 211–12 (2001); *State v. Hawkins*, 292 S.C. 418, 423, 357 S.E.2d 10, 13 (1987), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). "Where the solicitor refers to certain evidence as uncontradicted and the defendant is the only person who could contradict that particular evidence, the statement is viewed as a comment on the defendant's failure to testify." *State v. Sweet*, 342 S.C. 342, 348, 536 S.E.2d 91, 94 (Ct.App.2000).

Here, by stating, "Nobody can tell you that except Levell Weaver," the solicitor plainly implied a question for which only Weaver could supply an answer, and therefore indirectly commented on Weaver's silence. At the same time, although it is improper for a solicitor to indirectly comment on a defendant's failure to testify, such comments do not necessarily mandate reversal of a conviction. *Johnson v. State*, 325 S.C. 182, 187, 480 S.E.2d 733, 735 (1997). Indeed, a criminal defendant is entitled to a fair trial, not a perfect one. *State v. Mizell*, 332 S.C. 273, 285, 504 S.E.2d 338, 345 (Ct.App.1998). Thus, as a prerequisite to reversal, Weaver must demonstrate the effect of the solicitor's closing argument was to deny him a fair trial. In making this determination, we must examine the alleged impropriety in light of the entire record. *State v. Brown*, 333 S.C. 185, 191, 508 S.E.2d 38, 41 (Ct.App.1998); *see State v. King*, 349 S.C. 142, 159, 561 S.E.2d 640, 649 (Ct.App. 2002) ("The test of granting a new trial for alleged improper closing argument is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.").

In full view of the statement's context, we are forced to conclude that although the comment was improper, reversal is not mandated in this case. First, it was Weaver's counsel rather than the solicitor that first asked the jury to contemplate why Weaver would have stood over the victim. Though it was still improper for the solicitor to point out only Weaver could answer the question posed by his counsel, the egregiousness of the comment is mitigated by the previous comment of Weaver's counsel. Second, the trial court gave a corrective

instruction immediately after the allegedly improper argument. "Generally, a trial judge's curative instruction is deemed to cure any error." *State v. Simmons,* 352 S.C. 342, 354, 573 S.E.2d 856, 863 (Ct.App.2002). Accordingly, we find no error in the trial court's denial of Weaver's motion for mistrial.

## CONCLUSION

Based on the foregoing, we find the trial court properly admitted the evidence seized from the Jeep based on the automobile exception to the Fourth Amendment. Additionally, we hold the testimony of Lieutenant Weston regarding his investigation did not constitute inadmissible hearsay. Even if it did, any error in its admission would be harmless. Finally, we hold any impropriety in the solicitor's closing argument did not warrant reversal of Weaver's convictions.

**AFFIRMED.**

HEARN, C.J. and STILWELL, J., concur.