THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Paul H.
 Thompson, Appellant.
 
 
 

Appeal From Union County
 Steven H. John, Circuit Court Judge
Unpublished Opinion No. 2007-UP-540
Submitted November 1, 2007  Filed
 November 29, 2007
AFFIRMED

 
 
 
 Appellate
 Defender Eleanor Duffy Cleary of the South Carolina Commission on Indigent
 Defense, of Columbia, for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
 Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and
 Solicitor Kevin S. Brackett, of York; for Respondent.
 
 
 

__________
PER
 CURIAM:  Appellant, Paul Thompson, was indicted for and
 convicted of intimidation of court officials, witnesses, or jurors in violation
 of South Carolina Code Ann. § 16-9-340.[1] 
 He appeals, asserting the trial court erred in admitting inadmissible hearsay
 evidence from one witness to bolster the testimony of another witness, which
 was the basis of the prosecution.  We affirm.[2]
FACTUAL/PROCEDURAL BACKGROUND
This
 case arose from a telephone conversation between Thompson and Chief Sam White,
 the Chief of Public Safety for the City of Union.  Chief White testified that
 around three-thirty in the afternoon on Tuesday, March 15, 2005, he returned to
 his office and found a voice mail message had been left for him by Thompson
 telling the Chief who he was and leaving a phone number.  Chief White had known
 Thompson about twenty-five years and recognized his voice on the message.  
 
Chief
 White called the number and spoke with Thompson, who asked if the Chief was
 aware of Thompsons daughters situation.  The Chief told Thompson he knew
 Thompsons daughter had been in court that day, but he was unaware of the
 sentence she received.  Thompson relayed he was upset because his daughter was
 just a drug user, not a seller, but that the people who were selling drugs
 never were caught.  Chief White talked with Thompson some about his daughters
 case, after which Thompson made the statement that he had been in the military
 for thirty-eight years, and told the Chief that he was trained as a sniper. 
 Thompson discussed that the police did not catch the pushers, but only the
 users of drugs, and that he knew where they were and he was going to take care
 of them.  Thompson brought up his military training and asked the Chief if he
 knew what it meant that people referred to him as one-shot.  Chief White told
 Thompson he could not take the law into his hands and shoot someone. 
 Thereafter, the focus of Thompsons conversation changed from the drug
 dealers.  Thompson told Chief White that if they were having court the next
 day, it would be best if [Chief White] didnt go.  The Chief asked Thompson
 what he was talking about and Thompson replied that what happened in Atlanta
 will look like a picnic, and he was telling [Chief White] as a friend, that
 if they were having court the next day it would be best if the Chief did not
 attend.  Chief White explained that several court personnel had been killed in
 an Atlanta courtroom that previous Friday.  Toward the end of the conversation,
 Thompson told the Chief, Im telling you as a friend, dont go to court
 tomorrow if they have it, and he then hung up the phone.  
Chief
 White testified Thompson sounded as if he had been drinking, and seemed
 irritated and upset.  Knowing that Thompson was a gun dealer, Chief White
 feared for the safety of people at the courthouse.  After dropping off some
 money at City Hall, the Chief went to the Sheriffs Office and told Sheriff
 Howard Wells about the conversation he had with Thompson.  
Sheriff
 Wells testified that he is responsible for, among other things, security of the
 Union County Courthouse.  General Sessions Court was being held there the week
 of March 14, 2005, with Judge Westbrook presiding.  On Tuesday of that week,
 the court was taking guilty pleas and, after a break for lunch, bond hearings
 and more guilty pleas were scheduled.  Shortly after 4:00 p.m., as court was
 proceeding with these matters, Chief White came to Sheriff Wells office.  The
 Sheriff testified, Around four, four ten on the afternoon of Tuesday, March
 the 15th, Sam White the Public Safety Chief came to my office and
 told me that he had had a disturbing telephone call --.  Defense counsel then
 stated, Objection, your Honor, as to hearsay.  The trial court overruled the
 objection, stating simply, Im going to allow it.  Thank you very much. 
 Please proceed.  Sheriff Wells then testified that Chief White came to his
 office around 4:10 p.m. and informed him he had received a call from Thompson,
 which Chief White returned.  Sheriff Wells stated, The substance of that
 telephone conversation gave him some concern and he was relating to me what had
 been said.  The solicitor then asked whether the subject of the conversation
 was . . . reflected in the Chiefs testimony that he had just heard.  The
 Sheriff responded, Thats correct.  
The
 Sheriff then went on to testify to the steps he took to ensure the security for
 the Courthouse Complex as a result of Chief Whites report.  Specifically,
 Sheriff Wells informed Judge Westbrook of the threat directed toward the
 court.  His office obtained a warrant against Thompson, and put a plan in
 action to neutralize the threat.  If Thompson could be located and taken into custody
 in time, court would proceed the next day.  If, however, they were unable to
 timely take Thompson into custody, he would notify Judge Westbrook and the
 courthouse would be shut down the following day.  
Thompson
 was subsequently located, taken into custody, and booked into the jail around
 6:20 that evening.  However, the Sheriff testified they were still on
 heightened alert that next day, and because of Thompsons actions, the court
 effectively shut down the afternoon of the phone call, with no other matters
 being handled by the court that day.  Further, because Judge Westbrook was the
 sentencing judge in the case of Thompsons daughter, they provided security for
 the judge, and he and his law clerk did not leave Union County until Judge
 Westbrook was notified that Thompson was in custody.  
LAW/ANALYSIS
On
 appeal, Thompson contends the trial court erred in permitting inadmissible
 hearsay testimony by Sheriff Wells to bolster Chief Whites testimony about
 Thompsons statements, these statements being the basis of Thompsons
 prosecution.  Thompson argues the testimony by Sheriff Wells, that Chief White
 relayed the same information to him that Chief White testified to at trial,
 constituted an out-of-court statement offered to prove the truth of the matter
 asserted which is prohibited by Rule 801, SCRE.  Thompson further maintains
 these statements constituted a prior consistent statement which did not qualify
 as non-hearsay pursuant to Rule 801(d)(1)(B), SCRE.  Thompson asserts the
 admission of the improper bolstering testimony was prejudicial because it
 allowed the jury to hear two witnesses against him.
We
 first note that Thompson never raised below the specific arguments he makes on
 appeal.  He never argued to the trial court that Sheriff Wells testimony
 bolstered Chief Whites testimony, nor did he assert that the testimony of
 Sheriff Wells constituted a prior consistent statement that was inadmissible
 under the rules.  Thus, these arguments are not preserved for review.  See State v. Johnson, 363 S.C. 53, 58-59, 609 S.E.2d 520, 523 (2005) (To
 preserve an issue for appellate review there must be a contemporaneous
 objection that is ruled upon by the trial court and the objection should be
 addressed to the trial court in a sufficiently specific manner that brings
 attention to the exact error.  If a party fails to properly object, he is
 procedurally barred from raising the issue on appeal.); State v. Dunbar,
 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) (A party need not use the exact
 name of a legal doctrine in order to preserve it, but it must be clear that the
 argument has been presented on that ground.).
Turning
 to the specific objection Thompson did make, which was the simple statement of
 hearsay, it is notable that the objection was made prior to Sheriff Wells
 testimony regarding the content of Chief Whites statement.  The Sheriff
 testified Chief White reported to him He had a disturbing telephone call, at
 which point defense counsel objected and the court overruled the objection. 
 When the Sheriff continued his answer, he explained that the telephone
 conversation was with Thompson, the substance of the conversation gave Chief
 White some concern and that the Chief related to the Sheriff what had been
 said.  Sheriff Wells did not, at that point, testify as to what exactly Chief
 White relayed to him.  It is this testimony, along with the Sheriffs response
 to the question asked of whether the subject of Thompsons conversation with
 the Chief was reflected in Chief Whites testimony, that Thompson apparently
 complains of on appeal.  However, Thompson made no objection to these questions
 or responses at trial.
At
 any rate, assuming that Thompsons single hearsay objection was sufficient to
 constitute an objection to the line of questioning regarding what Chief White
 relayed to Sheriff Wells, we find no error.  First, Sheriff Wells did not
 testify, as Thompson maintains, that Chief White relayed to him the same
 information to which he had testified at trial.  Sheriff Wells merely stated
 the Chief relat[ed] to [him] what had been said and that the subject of the conversation was reflected in Chief Whites testimony.  Rule 801(c), SCRE, provides, Hearsay is
 a statement, other than one made by the declarant while testifying at the trial
 or hearing, offered in evidence to prove the truth of the matter asserted. A
 statement is defined as (1) an oral or written assertion or (2) nonverbal
 conduct of a person, if it is intended by the person as an assertion.  Rule
 801(a), SCRE.  There was no oral or written assertion or nonverbal conduct
 testified to by the Sheriff and therefore the testimony complained of does not
 qualify as a statement under the rule.  
Further, even if the complained of testimony did amount to a
 statement, it was not a statement used to prove the truth of the matter
 asserted.  See State v. Weaver, 361 S.C. 73, 86-87, 602
 S.E.2d 786, 792-93 (Ct. App. 2004), affd as modified, 374 S.C. 313, 649
 S.E.2d 479 (2007) (finding no error in the admission of evidence because testimony did not constitute hearsay where officer never repeated
 statements made to him by individuals at the crime scene, but testified only to
 the conclusions he made based on what his investigation had revealed and testimony
 was offered to explain part of his investigation); State v. Thompson,
 352 S.C. 552, 558, 559, 575 S.E.2d 77, 81 (Ct. App. 2003) (finding testimony
 concerning a statement from a bystander to the police was not hearsay because
 it was not offered to prove the truth of the matter asserted but rather to
 explain and outline the investigation and the officers reason for going to the
 defendants home); State v. Kirby, 325 S.C. 390, 396, 481 S.E.2d 150,
 153 (Ct. App. 1996) (concluding testimony by police officer about dispatchers
 call informing of drugs and firearms in a car was not hearsay where offered to
 explain the reason for the initiation of police surveillance of the vehicle in
 question); State v. Brown, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994)
 (holding an out of court statement is not hearsay if it is offered for the
 limited purpose of explaining why a government investigation was undertaken). 
 Here, the testimony was offered to explain the reason behind the actions
 Sheriff Wells was required to take.  Accordingly, we conclude this testimony
 was not hearsay and was properly admitted to explain the necessity of the
 actions Sheriff Wells took to secure the safety of Judge Westbrook and the
 courthouse.
Finally, even if the Sheriffs testimony constituted inadmissible
 hearsay, the admission was harmless.  Chief White testified as to the
 conversation he had with Thompson and that he reported this conversation to
 Sheriff Wells.  Thus, the Sheriffs testimony that Chief White related what had
 been said in his conversation with Thompson and that the subject of Chief
 Whites conversation with Sheriff Wells was reflected in the Chiefs testimony
 is merely cumulative to Chief Whites testimony.  See State v.
 Haselden, 353 S.C. 190, 197, 577 S.E.2d 445, 448-49 (2003) (any error in
 admission of evidence cumulative to other unobjected-to evidence is harmless); State
 v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) (improper
 admission of hearsay evidence is reversible error only when the admission
 causes prejudice).
For the foregoing reasons, Thompsons
 conviction is
AFFIRMED.
HUFF and PIEPER, JJ., and GOOLSBY, AJ., concur.

[1]This code section provides in pertinent part:
(A) It is unlawful for a
 person by threat or force to:

 (1)
 intimidate or impede a judge, magistrate, juror, witness, or potential juror or
 witness, arbiter, commissioner, or member of any commission of this State or
 any other official of any court, in the discharge of his duty as such;  or
 (2) destroy,
 impede, or attempt to obstruct or impede the administration of justice in any
 court.

S.C. Code Ann. §
 16-9-340 (2003).
[2]We decide this case without oral argument pursuant to
 Rule 215, SCACR.