21107

The STATE, Respondent, v. Glen H. FERRELL, Appellant

(266 S. E. (2d) 869)

*John R. Hetrick,* Walterboro, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Brian P. Gibbes* and *Kay G. Crowe,* Columbia, and *Sol. William W. Wilkins, Jr.,* Greenville, *for respondent.*

January 7, 1980.

NESS, Justice:

Appellant Ferrell was convicted of possession with intent to distribute phencyclidine (PCP), a Schedule III controlled substance, and was sentenced to three years imprisonment. We affirm.

In the early afternoon of October 13, 1977, Sergeant Walter M. Thompson of the Greenville Police Department received information from a confidential informant illicit drugs were being distributed from an apartment occupied by Phil Mason. On the basis of this information, a warrant was obtained to search the apartment.

It is conceded the search warrant for Mason's apartment was valid, based upon a reliable informant's tip that he had personally witnessed the distribution of illicit drugs from the premises within the past twenty-four to forty-eight hours. *Spinelli v. U. S.,* 393 U. S. 410, 89 S. Ct. 584, 21 L. Ed. (2d) 637 (1969) ; *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. (2d) 723 (1964) ; *State v. Winborne,* S. C., 254 S. E. (2d) 297 (1979) ; *State v. Peters,* 271 S. C. 498, 248 S. E. (2d) 475 (1978).

Additionally the informer advised the police that Mason owned a gray Chevrolet Corvette automobile and that he "would probably" be going out to Donaldson Center to pick up more drugs on the evening of the warrant's execution.

The officers observed a gray Chevrolet Corvette automobile with two occupants travelling from the vicinity of Mason's apartment in the direction of Donaldson Center. Shortly thereafter, they observed a gray Chevrolet Corvette automobile with Mason and appellant therein drive into the apartment complex parking lot. The officers approached the two men, conducted a brief pat down search of their persons in the cold and rain. The officers then directed the two men to go into Mason's apartment, where a more thorough search of appellant revealed ninety-nine PCP tablets.

Appellant asserts this second search of his person was improper and the PCP tablets should not have been admitted at his trial. We disagree.

We have no difficulty holding that the initial pat down search conducted in the parking lot fell well within the "stop and frisk" exception to the Fourth Amendment warrant requirement. See *Commonwetlth of Pennsylvania v. Mimms,* 434 U. S. 106, 98 S. Ct. 330, 334, 54 L. Ed. (2d) 331 (1977) ; *Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. (2d) 889 (1968) ; *State v. Foster,* 269 S. C. 373, 237 S. E. (2d) 589 (1977). At the time the officers conducted this search, they were aware of the follow-

ing facts: (1) that illicit drugs had recently been seen and sold in Mason's apartment; (2) that Mason owned a gray Chevrolet Corvette automobile; (3) that Mason "would probably" be going out to Donaldson Center to pick up more drugs; (4) that a gray Chevrolet Corvette automobile with two occupants had recently been driven from the direction of Mason's apartment toward Donaldson Center; and (5) that a gray Chevrolet Corvette automobile occupied by Mason and appellant had just pulled up in the parking lot. These specific and articulable facts, taken together with the rational inferences from those facts, clearly warranted the conclusion that criminal activity might have been afoot.

We have no more difficulty holding that the more thorough search in Mason's apartment fell within the search incident to a valid custodial arrest exception to the warrant requirement. Police officers may make a search of an arrestee's person and the area within his immediate control for weapons and destructible evidence without first obtaining a search warrant. See *U. S. v. Robinson,* 414 U. S. 218, 94 S. Ct. 467, 38 L. Ed. (2d) 427 (1973); *In Re Jones,* 264 S. C. 286, 214 S. E. (2d) 816 (1975). The sole prerequisite is that there be a prior arrest supported by probable cause.

When the police officers ordered Mason and appellant out of the parking lot and into Mason's apartment, they so substantially deprived the two men of their freedom of movement as to constitute a full custodial arrest. *Henry v. U. S.,* 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. (2d) 134 (1959).[1] Clearly the officers' actions constituted a sufficient show of authority to restrain appellant's freedom of movement, therefore, the appellant was seized. *U. S. v. Palmer,* 603 F. (2d) 1286 (8th Cir. 1980). The search in Mason's apartment being incident to this arrest, the sole issue is whether it was based upon probable cause.

---

[1] See *U. S. v. Pope,* 561 F. (2d) 663, 668 (6th Cir. 1977).

The seizure of the appellant by requiring him to go into Mason's apartment constituted a seizure of his person. On the facts of this case, considering the existence of probable cause, the very limited intrusion undertaken, and the ready destructibility of the evidence, we cannot say that this search violated the Fourth and Fourteenth Amendments.

Certainly the appellant could have been seized and searched at the automobile in the cold and rain. Searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detection. *Abel v. United States,* 362 U. S. 217, 80 S. Ct. 683, 4 L. Ed. (2d) 668 (1960). Similarly here under these circumstances, when the officers' observations corroborated the minute and detailed facts contained in the warrant this would support a probable cause belief that one or more of the occupants had committed a felony. A felony arrest validly may be made on that basis. [*E. g. U. S. ex rel LaBelle v. LaVallee,* 517 F. (2d) 750 (2nd Cir. 1975) ; *Gullett v. United States,* 387 F. (2d) 307 (8th Cir. 1967), cert. den., 390 U. S. 1044, 88 S. Ct. 1645, 20 L. Ed. (2d) 307 (1968) ; *State v. Bell,* 263 S. C. 239, 209 S. E. (2d) 890 (1974), cert. den., 420 U. S. 1008, 95 S. Ct. 1453, 43 L. Ed. (2d) 767 (1975)].

Clearly, all the surrounding circumstances within the knowledge of the arresting officers, when measured by the standard appropriate for a reasonable, cautious and prudent officer engaged in a narcotics investigation, indicate that there was probable cause for an arrest.

"Rather than blind worship of cause alone, the law probes for the basis of the officer's action measuring it by an external standard." *U. S. v. Walker,* 246 F. (2d) 519, 528 (7th Cir. 1957).

In making this assessment we do not isolate for independent analysis each factual circumstance, but view the action

of the arresting officers on the basis of the *cumulative effect* of such facts in the totality of the circumstances. *Jackson v. U. S.* 408 F. (2d) 1165 (8th Cir. 1969) ; *U. S. v. Williams,* 442 F. (2d) 738 (1970). Here the arrest took place outside the apartment, after the officers made a brief "pat down" search in the cold and rain. They had a legal search warrant, and sufficient information from a confidential informer, most of which was corroborated. We would hold the search was incident to a lawful custodial arrest made upon probable cause.[2] *U. S. v. Robinson,* 414 U. S. 218, 94 S. Ct. 467, 38 L. Ed. (2d) 427 (1979). Writing for the Court, Justice Rehnquist stated:

"A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.——, does not depend on what a court may later decide was the probability in a particular arrest situation . . ." 94 S. Ct. 477.

Appellant argues that probable cause for arrest existed only as to Mason, if at all, and therefore the arrest and subsequent search of appellant was improper under *Sibron v. New York,* 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. (2d) 917 (1968). Unlike *Sibron,* the facts here were sufficient to lead the officers to conclude that there was criminal activity; and unlike *U. S. v. DiRe,* 332 U. S. 581, 68 S. Ct. 222, 92 L. Ed. (2d) 210 (1948), the same facts lead to the conclusion that appellant was equally involved as Mason. It is unreasonable to infer that anyone other than a participant would be present. In such a persuasive setting probable cause existed to search all present. *U. S. v. Johnson,* 475 F. (2d) 977, 980 (1973) ; *State v. DeSimone,* 60 N. J. 319, 288 A. (2d) 849 (1972).

---

[2] The custodial arrest occurred when the officers required appellant to come into the apartment.

It is important to distinguish the search in this case from the search of companions in a public place. *U. S. v. DiRe, supra.* While one is entitled to know wherever he may be "he will [be] free from unreasonable searches," *Katz v. U. S.*, 389 U. S. 347, 359, 88 S. Ct. 507, 515, 19 L. Ed. (2d) 576 (1967), the test of *reasonableness* will include place and circumstances.

Moreover, the Fourth Amendment does not forbid the search for evidence simply because the owner, possessor, occupant or visitor of the place to be searched is not a suspect when the search warrant was issued. Whether the third party is suspect or not, the State's interest in enforcing the criminal law and recovering evidence remains the same. A search warrant is often acquired, early in an investigation, certainly before all the perpetrators are or could be known. Forbidding the search of the third person on the premises could easily result in the disappearance of the evidence.

No more should be required where the warrant issued is for the seizure of criminal evidence on the premises. Here the appellant was on the premises, the criminal evidence was found in his pocket.[3] The search was substantially contemporaneous with the arrest.

Under the circumstances in this case, an expectation of privacy by the appellant is not "one that society is prepared to recognize as reasonable." *Katz v. U. S.*, 389 U. S. 347, 361, 88 S. Ct. 507, 516, 19 L. Ed. (2d) 576 (1967).

Thus even assuming no exigency attended the arrest, the search was proper since it was contemporaneous with the arrest. The officers had probable cause to believe that an offense was being committed and that the appellant was in possession of evidence of the crime at the time of the arrest. The standard of reasonableness does not rise

---

[3] For analogous case see *Zurcher v. Stanford Daily, et al.*, 436 U. S. 547, 98 S. Ct. 1970, 56 L Ed. (2d) 525 (1978).

or fall on the detached observations of the courts as to whether an exigency existed at the time of the arrest. It must be based on a subjective analysis of the situation confronting the arresting officers.

Based upon the instant operative factual setting we conclude the arrest and search was attended by exigent circumstances. The lawful arrest established the authority to search. We hold in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, J., concur.

RHODES and GREGORY, JJ., dissent.

GREGORY, Justice (dissenting) : I respectfully dissent.

The only question presented by this appeal is whether the second search of the appellant Ferrell was lawful. The validity of the search warrant for Mason's apartment, the validity of the pat-down or first search of the appellant, and the search of Mason's automobile are not at issue.

The majority opinion justifies this second search as a search incident to the lawful warrantless arrest of appellant. This justification for the search, however laudatory it may be in view of the fact that appellant actually was in possession of the phencyclidine,[1] was introduced into this case for the first time by the majority opinion.

The record reveals that no arrest was made by any law enforcement officer at the scene prior to the second search of appellant:

"MR HETRICK: Now, at the time that car pulled up, what exactly happened? Did you immediately go to the car

___

[1] As a result of a recent amendment to Section 44-53-210(f), 1976 Code, phencyclidine is now a Schedule II controlled substance. See Act No. 118 of 1979.

and place the individuals under arrest, or were they on their way inside the apartment when you accosted them?

"SGT. PARSONS: We approached the car, we placed no one under arrest at that time. They were being detained.

\* \* \*

"Q: He was under arrest at that point?

"A: I wouldn't say he was under arrest, he was being detained. We had no—no officer at the time had said, "You are under arrest.'"

In fact, the record reveals that no arrest was made until *after* the second search:

"SOLICITOR WILKINS: All right, after finding these pills on Mr. Ferrell's person, did you take him into arrest custody and transport him to the Law Enforcement Center?

"SGT. PARSONS: Yes, sir, I informed him *at that time* that he was under arrest for possession with intent to distribute PCP and that he would be taken to the Greenville County Detention Center." (Emphasis added.)

Thus, the law enforcement officer in charge asserts no arrest of Ferrell was made prior to the second search.

At trial, no argument was presented by the capable solicitor that the second search was made as an incident to the arrest of Ferrell. The solicitor argued that the second search of appellant was lawful under the "automobile exception" to the warrant requirement. The trial judge agreed and admitted the phencyclidine into evidence on the ground that the second search was lawful under the automobile exception, not the search incident exception.

On appeal, the State actually argues that Ferrell was not arrested until after the second search, and the brief of the State contains the following synopsis of the testimony of the law enforcement officers: "The police consistently testified that he [Ferrell] was not arrested until after the pills were found in his possession."

Since the law enforcement officers had no warrant to search appellant, the burden was upon the State to show that the search was permissible without a warrant. *State v. Ellefson,* 266 S. C. 494, 224 S. E. (2d) 666 (1976). At no stage of the proceedings in this case has the State attempted to justify the second search of appellant as an incident of a lawful, warrantless arrest.

Assuming, however, that the State had advanced the "search incident" justification to the trial court, the facts of this case simply will not support the finding of probable cause necessary for the warrantless arrest and search of appellant.

The law enforcement officers at the scene did not observe appellant enter or leave Mason's apartment prior to the time of the second search. The police could neither identify the grey Corvette that drove away from the apartment complex nor the two occupants of the automobile. Although the Corvette drove in the direction of the Donaldson Center, no one followed the car to determine whether it went to the Donaldson Center.

When a grey Corvette later drove into the apartment complex the police were unable to say whether it was the same grey Corvette that had left the complex earlier, and if it was, whether the two individuals who got out of the automobile were the same two individuals who had left in it.

The police searched the automobile for drugs, and conducted a pat-down search for weapons and drugs of both Mason and appellant. Nothing even remotely suspicious was uncovered by any of these searches. Every circumstance negated probable cause for a warrantless arrest and search of appellant, who was not known to the police officers as a criminal or one connected with drug trafficking. It is also worthy of note that the search of Mason's apartment, which occurred after the second search of Ferrell, revealed no drugs.

Moreover, even if the officers, suspicion that appellant was connected with the drug trafficking were reasonable, nothing

short of particularized probable cause would have permitted the search of appellant for drugs. His mere presence on premises subject to a valid search warrant, without more, is not enough. *Ybarra v. Illinois,* ——— U. S. ———, 100 S. Ct. 338, 64 L. Ed. (2d) ——— (1979). This is especially true since the police ordered appellant into the premises after having conducted a fruitless *Terry* pat-down outside the premises.

[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York,* 392 U. S. 40, 62-63 [88 S. Ct. 1889, 1902, 20 L. Ed. 2d 917]. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Ybarra, supra,* ——— U. S. at ———, 100 S. Ct. at 342.

In my view, none of the informant's tips were remotely corroborated by the police prior to the time of the second search. Because of this total lack of corroboration, the informant's tips never ripened into probable cause and the phencyclidine was seized as a result of a warrantless search made mithout probable cause for a warrantless arrest.

I would reverse appellant's conviction and sentence.

RHODES, J., concurs.