698 S.E.2d 811

### The STATE, Respondent,

v.

### Danny Cortez BROWN, Appellant.

### No. 4697.

Court of Appeals of South Carolina.

Heard March 2, 2010.

Decided June 14, 2010.

Rehearing Denied Sept. 24, 2010.

474

Appellate Defender Elizabeth A. Franklin, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Assistant Attorney General Suzanne H. White, all of Columbia; and John Gregory Hembree, of Conway, for Respondent.

SHORT, J.

Danny Brown was charged with trafficking cocaine. Following a jury trial, he was convicted and sentenced to twenty-five years incarceration. He appeals, arguing the trial court erred by denying his motion to suppress the drugs seized after his arrest for an open container violation. We reverse.

## FACTS

Officer Daryl Williams was on patrol in Myrtle Beach, South Carolina. While traveling down a road, he observed a 1976 Plymouth next to him and saw a passenger drinking what appeared to be a beer. The passenger, Brown, saw Officer Williams and tucked the beer can between his legs. Officer Williams pulled the car over and noticed a small duffel bag on the floorboard between Brown's legs. Officer Williams testified he was suspicious of the occupants because the driver acted nervous while Brown appeared "artificially laid back."

Initially, Brown denied having a beer, but then he pulled the can up from his lap. Officer Williams removed Brown from the car, recovered the beer can, arrested him for an open container violation, and placed his duffel bag on the sidewalk. He handcuffed Brown and placed him in a patrol car. After securing Brown, Officer Williams returned to the car to make "small talk" with the driver. He returned to the duffel bag, searched it, and found cocaine concealed inside a Fritos bag. Officer Williams stated he closed the duffel bag and resumed conversation with the driver. He ran the driver's license, discovered it was suspended, and placed the driver under arrest for that offense.

During trial, Brown moved to suppress the drugs on a violation of his Fourth Amendment rights. The trial court denied the motion to suppress, finding there was probable cause to stop the car, and Brown's arrest was lawful. The trial court held the search was proper because it was a search incident to a lawful arrest. Brown was found guilty and sentenced to twenty-five years imprisonment. This appeal followed.

## STANDARD OF REVIEW

When reviewing a Fourth Amendment search and seizure case, we do not review the trial court's ultimate determination de novo, rather we apply a deferential standard. *State v. Khingratsaiphon*, 352 S.C. 62, 70, 572 S.E.2d 456, 459–60 (2002). This court reviews the trial court's ruling like any other factual finding, and we will reverse only if there is clear error. *Id.* Therefore, we will affirm if any evidence exists to support the trial court's ruling. *Id.*

## LAW/ANALYSIS

On appeal Brown argues the trial court erred by denying his motion to suppress the drugs in violation of his Fourth Amendment rights. We agree.

■ The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Any evidence seized in violation of the Fourth Amendment must be excluded. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ It is well established that warrantless searches and seizures by the police are per se unreasonable, unless they fall within one of several recognized exceptions. *State v. Weaver*, 361 S.C. 73, 80–81, 602 S.E.2d 786, 790 (Ct.App.2004). These exceptions include: (1) search incident to a lawful arrest; (2) hot pursuit; (3) stop and frisk; (4) automobile exception; (5) plain view doctrine; (6) consent; and (7) abandonment. *Id.*

## A. Search Incident to Arrest[1]

Under the search incident to arrest exception, if the arrest is supported by probable cause, police officers may search an arrestee's person and the area within his or her immediate control for weapons and destructible evidence without first obtaining a search warrant. *State v. Ferrell*, 274 S.C. 401, 405, 266 S.E.2d 869, 871 (1980). However, this doctrine does not allow law enforcement officers to conduct a warrantless search of an arrestee's automobile after the arrestee has been handcuffed or otherwise prevented from regaining access to the car, unless it is reasonable to believe (1) the arrestee might access the vehicle at the time of the search, or (2) that the vehicle contains evidence of the offense of the arrest. *Arizona v. Gant*, — U.S. ——, 129 S.Ct. 1710, 1723–24, 173 L.Ed.2d 485 (2009) (limiting *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and *Thornton v. U.S.*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)).

The burden of establishing the existence of circumstances constituting an exception to the general prohibition against warrantless searches is upon the State. *Weaver*, 361 S.C. at 81, 602 S.E.2d at 790.

In the present case, neither of the exceptions stated in *Gant* apply. Officer Williams testified he had Brown exit the car to be handcuffed and arrested for the offense of open container. He took the duffel bag from the car, placed it on the sidewalk, and then put Brown in the back of his patrol car. After securing Brown, Officer Williams returned to the car and made "small talk" with the driver. He testified:

I wanted to deal with him later, but I just wanted to get a glance into the bag, so I did unzip the bag, and look in. It

---

1. Initially, the State argues this issue is not preserved for review. We disagree. Trial counsel asked the trial court to suppress the evidence, and the trial court denied this request. This issue was raised to and ruled upon by the trial court and is properly before this court. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

was personal items like, perhaps deodorant, undergarments ... and there was a bag of Fritos potato chips, corn chips, whatever ... and it was open, so it was kind of crumpled shut, I believe, so I went and just opened it up to get a look into the bag, and then I seen inside that bag a—what appeared to be a plastic bag with a white powdery substance, which is—you know, looks—appears to be cocaine.

It is clear from Officer Williams' testimony that Brown was handcuffed and securely placed in the patrol car prior to Officer Williams searching the duffel bag. During Officer Williams' search, Brown could not have accessed the vehicle or the duffel bag. Thus, it was impossible that Brown could have accessed the vehicle at the time of the search, making the first exception in *Gant* inapplicable.

As to the second *Gant* exception, Officer Williams was not looking for evidence for the offense charged. There was no evidence presented that Officer Williams had a reasonable belief that the duffel bag or Frito bag held further evidence of the open container violation. Brown told Officer Williams he did not have any more beer. More to the point, when asked if the beer can was taken into evidence, Officer Williams explained, for this type of charge "we don't take that sort of thing in evidence." We therefore conclude the search incident to arrest exception does not apply in the present case.[2]

## B. The Automobile Exception

Because of its mobility and the lessened expectation of privacy in motor vehicles, a motor vehicle may be searched without a warrant based solely on probable cause. *State v. Cox*, 290 S.C. 489, 491, 351 S.E.2d 570, 571–72 (1986). Just like a driver of an automobile, passengers possess a reduced expectation of privacy with regard to the property that they transport in cars. *Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). The standard for probable cause to make a warrantless search is the same as

---

**2.** In fairness to the trial court, it did not have the guidance provided to us by the United States Supreme Court in the *Gant* case.

that for a search with a warrant. *State v. Bultron,* 318 S.C. 323, 332, 457 S.E.2d 616, 621 (Ct.App.1995).

 Articulating precisely what probable cause means is not possible. *Ornelas v. U.S.,* 517 U.S. 690, 695–96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause is a commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Id.* Probable cause to search exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place. *Id.* The principal components of the determination of probable cause will be whether the events which occurred leading up to the search, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Id.* The scope of a warrantless search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that the object may be found. *State v. Perez,* 311 S.C. 542, 546, 430 S.E.2d 503, 505 (1993).

 If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Houghton,* 526 U.S. at 301–02, 119 S.Ct. 1297. This rule applies to all containers within a car, without qualification as to ownership of a particular container and without a showing of individualized probable cause for each container. *Id.*

As noted above, Officer Williams placed Brown under arrest for an open container. Officer Williams had already recovered the beer can, which interestingly he did not take into evidence, prior to searching the duffel bag. Based on this, the only evidence Officer Williams could have been searching for was more beer. The bag in question was not a grocery bag where one would expect to find beer. Rather, the bag was a zipped-up duffel bag that would be used to carry clothes. One of the officers stated, "The black duffel bag was more like a gym

bag, like a small carry-on bag to take on an airplane, or to a gym . . . ."

Additionally, Officer Williams never testified he searched the bag to find evidence of a crime. According to Officer Williams, he removed the bag from the car because it posed a "safety issue," and because he wanted to separate the bag from the driver. Officer Williams stated after he placed Brown in the patrol car, he searched the duffel bag because he "wanted to get a glance into the bag."

Viewing the evidence and testimony through the lens that the State bears the burden to prove an exception to the prohibition against warrantless searches, as we must, we conclude Officer Williams did not have probable cause to search the bag.

## C. The Exclusionary Rule, Inevitable Discovery, and Inventory Search

▮ The State urges us to accept that the drugs would have been inevitably discovered during an inventory search. We disagree.

▮ The exclusionary rule provides that evidence obtained as a result of an illegal search must be excluded. *State v. Sachs*, 264 S.C. 541, 560, 216 S.E.2d 501, 511 (1975). The inevitable discovery doctrine is an exception to the exclusionary rule and states that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, the information is admissible despite the fact it was illegally obtained. *Nix v. Williams*, 467 U.S. 431, 443–44, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The fruit of the poisonous tree doctrine, most often associated with violations of the Fourth Amendment's prohibition of unreasonable searches and seizures, prohibits the use of evidence obtained directly or indirectly through an unlawful search or seizure. *Wong Sun v. U.S.*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

▮ If the police are following standard procedures, they may inventory impounded property, including closed containers, to protect an owner's property while it is in police

custody. *Colorado v. Bertine*, 479 U.S. 367, 372–73, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Standardized criteria or established routine must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 3, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

The State provided very scant testimony, at best, that the duffel bag or car would have been taken into police custody after Brown and the driver were arrested.[3] Although commonsense dictates the police would have done exactly this, we are confined by the law that the prosecution bears the burden to establish by a preponderance of the evidence that the evidence would inevitably have been discovered. *Nix*, 467 U.S. at 443–44, 104 S.Ct. 2501. Additionally, police must follow standard procedures to conduct an inventory search and no such testimony was presented. Thus, we conclude the inevitable discovery doctrine does not apply and the trial court erred by failing to exclude the evidence. *See State v. Grant*, 174 S.C. 195, 177 S.E. 148, 149 (1934) ("The right of people to go about their business without being subjected to undue search and seizure ... by the authorities of the law .... are essential to an orderly government."). Consequently, we reverse Brown's conviction and vacate his sentence.

## CONCLUSION

Accordingly, the trial court's decision is

**REVERSED.**

WILLIAMS and LOCKEMY, JJ., concur.

---

3. The solicitor asked an officer, "Did you have occasion to search that vehicle pursuant to the arrest?" In reply the officer testified, "Yes. Yes sir. Under lawful search incident to arrest of the vehicle (sic), in the passenger area, and pursuant also to guidelines of doing inventory of the vehicle before towing, we searched that vehicle."