720 S.E.2d 468

**The STATE, Respondent,**

v.

**Kenneth Darrell MORRIS, II, Appellant.**

No. 4872.

Court of Appeals of South Carolina.

Heard March 8, 2011.

Decided Aug. 17, 2011.

Withdrawn, Substituted and Refiled Nov. 2, 2011.

602

Johnny Gardner and Jonathan Hiller, both of Conway, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Mark R. Farthing, all of Columbia; and Solicitor Kevin S. Brackett, of York, for Respondent.

THOMAS, J.

During a traffic stop, police officers searched the trunk of a car driven by Kenneth Darrell Morris, II, and discovered a quantity of ecstasy pills. A large amount of marijuana was also found during the subsequent inventory search. During his trial for trafficking ecstasy and possession of marijuana with intent to distribute, Morris unsuccessfully moved to suppress the drugs as fruit of an illegal search. A jury convicted Morris of both charges. Morris appeals the trial court's decision not to suppress the drugs. We affirmed the decision in a published opinion filed August 17, 2011. We now issue this amended opinion to emphasize the outcome of this appeal is governed by our standard of review.

## FACTS

On the afternoon of February 6, 2008, Morris and a passenger, Brandon Nichols, were traveling northbound on I–77 in York County in a rented Ford 500. While riding in an unmarked police cruiser, Officer L.T. Vinesett, Jr., and Constable W.E. Scott noticed the Ford following a truck too

closely. The vehicle exited the interstate and proceeded to a gas station and rest area, where Officer Vinesett initiated a traffic stop.

Officer Vinesett approached the passenger side of the vehicle, where Nichols was sitting. Officer Vinesett asked for Morris's license and registration, and after a rental agreement was produced, Officer Vinesett noticed the car was rented to Nichols and Morris was not an authorized driver. Speaking through the passenger window, Officer Vinesett instructed Morris to exit the car, and as Morris opened the driver's side door, Officer Vinesett noticed hollowed Phillies Blunts [1] in the center console and blunt tobacco in the center console and on the floorboard.

To avoid the rain, Officer Vinesett had Morris sit in the front passenger seat of the police cruiser while he inquired about Morris's travel plans. Morris told him Nichols rented the vehicle the previous day in Greensboro, North Carolina, and they were on their way back from visiting some women in Atlanta, Georgia. Officer Vinesett also asked Morris whether Morris had a drug record. Morris disclosed he had been arrested for a marijuana offense when he was a minor.

Officer Vinesett returned to the Ford, and outside the presence of Morris, Nichols stated the pair was returning from a basketball game in Atlanta. Officer Vinesett consequently radioed for a nearby canine unit to bring a drug dog to the scene. He explained that he pulled over two men who offered conflicting stories of their plans, one of whom had a previous drug conviction, and that he had seen loose blunt tobacco in the car, suggesting they had been rolling marijuana in the blunts.

While waiting for the drug dog, Morris consented to a search of his person, and the search yielded no contraband. Morris then went to the restroom under Constable Scott's supervision. Officer Vinesett asked Nichols to exit the car and requested consent to search Nichols's person. Nichols consented, and again, the search yielded no contraband.

---

1. Phillies Blunts are a brand of inexpensive, American-made cigars. The tobacco inside a Phillies Blunt is often emptied in order to roll a marijuana cigar.

Moments later, Officer Gibson arrived with a drug dog. While Morris was still in the restroom, Officer Vinesett and Officer Gibson asked Nichols for permission to search the car, saying the officers would use the drug dog if consent was not given. Nichols refused to give consent, so Officer Gibson walked the dog around the car twice. The dog did not alert on either lap around the car and was returned to the police cruiser. Officer Vinesett again asked Nichols for consent to search the car, and Nichols again refused. Roughly thirteen minutes after the stop had been initiated, Nichols stated he "was ready to go."

Shortly thereafter, the officers held a conversation away from Morris and Nichols. Officer Vinesett returned to the Ford, leaned through the still open window of the car, and looked around for a few moments. He then returned to Nichols, who was still seated in the police cruiser, and stated that he could have "swor[n he] could smell some marijuana." Nichols responded that Officer Vinesett was confusing the smell of the Black & Mild he recently smoked with marijuana and he neither had marijuana, nor was he a marijuana smoker.

At that time, Officer Vinesett and Officer Gibson returned to the car and searched the passenger compartment. The emptied blunts contained no marijuana or marijuana residue, and the officers found no other evidence of contraband in the passenger compartment. However, Officer Vinesett searched the trunk and eventually found a plastic bag containing 393 ecstasy pills inside a gift box. The men were arrested slightly over fourteen minutes after the initiation of the stop. The car was impounded, and a subsequent inventory search of the car yielded nearly a half pound of marijuana hidden under the spare tire.

At trial, Morris moved to suppress the drug evidence, arguing the officers illegally extended the scope and length of the traffic stop and probable cause did not support the search of the trunk. During the suppression hearing, Officer Vinesett testified that, although he failed to mention it to Constable Scott at the scene or Officer Gibson when he requested the dog, he smelled the odor of burnt marijuana when he first approached the car. The trial court denied the motion. It specifically discounted what Officer Vinesett classified as Mor-

ris's and Nichols's "inconsistent stories." However, it found Officer Vinesett's testimony regarding the smell of marijuana credible, and it held the length and scope of the stop was reasonable in light of the circumstances. Additionally, the trial court found that even though the dog did not alert on the car, the marijuana smell, loose tobacco, and hollowed blunts, in light of the officer's knowledge and experience, amounted to probable cause to search the entire car, including the trunk. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in finding the officers had reasonable suspicion to expand the scope and length of the traffic stop?

II. Did the trial court err in finding the search of the trunk was supported by probable cause?

## STANDARD OF REVIEW

In Fourth Amendment search and seizure cases, our standard of review is limited to the following:

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support. When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling. The appellate court will reverse only when there is clear error.

*State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011) (citations and internal quotation marks omitted). "[T]his deference does not bar this Court from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence." *State v. Tindall*, 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010).[2]

---

2. *Tindall* articulated the standard of review subsequently repeated in *Wright*. However, *Tindall's* ensuing discussion included a footnote explaining that this standard of review requires a two-part analysis: (1) whether the record supports the trial court's factual findings and (2) whether those factual findings establish reasonable suspicion or proba-

## I. Scope and Length of the Stop

Morris argues the trial court erred in failing to suppress the drugs because (1) Officer Vinesett's testimony he smelled burnt marijuana during the detention lacks credibility and (2) Officer Vinesett unlawfully extended the traffic stop.

 Upon a lawful traffic stop, an officer "may order the driver to exit the vehicle ... [,] request a driver's license and vehicle registration, run a computer check, and issue a citation." *State v. Pichardo*, 367 S.C. 84, 98, 623 S.E.2d 840, 847 (Ct.App.2005) (citations omitted). However, a lawful traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *see also Pichardo*, 367 S.C. at 98, 623 S.E.2d at 848 ("Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention."). The extension of a lawful traffic stop is permitted if (1) the encounter becomes consensual or (2) the officer has a reasonable, articulable suspicion of other illegal activity. *Pichardo*, 367 S.C. at 99, 623 S.E.2d at 848.

 Reasonable suspicion requires " 'a particularized and objective basis' that would lead one to suspect another of criminal activity." *State v. Lesley*, 326 S.C. 641, 644, 486 S.E.2d 276, 277 (Ct.App.1997) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). It "is something more than an inchoate and unparticularized suspicion or hunch." *State v. Rogers*, 368 S.C. 529, 534, 629 S.E.2d 679, 682 (Ct.App.2006). Therefore, in determining whether reasonable suspicion exists, the trial court must consider the totality of the circumstances. *Id.*

 Initially, we must reject Morris's first argument. Regardless of whether we believe Officer Vinesett's testimony

ble cause. *See Tindall*, 388 S.C. at 523 n. 5, 698 S.E.2d at 206 n. 5 ("While we acknowledge that we review under the deferential 'any evidence' standard, this Court still must review the record to determine if the trial judge's ultimate determination is supported by the evidence. In short, we must ask first, whether the record supports the trial court's assumed findings ... and second, whether these facts support a finding that the officer had reasonable suspicion of a serious crime to justify continued detention of Tindall." (citation omitted)).

that he smelled marijuana, the trial court found that testimony to be credible. The appellate court's task in reviewing the trial court's factual findings on a Fourth Amendment issue is simply to determine whether any evidence supports the trial court's findings. *See State v. Asbury*, 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997) ("This Court's scope of review is determined by our State constitution which limits our scope of review in law cases to the correction of errors of law. In criminal cases, appellate courts are bound by fact findings in response to preliminary motions where there has been conflicting testimony or where the findings are supported by the evidence and not clearly wrong or controlled by an error of law." (citations omitted)).

■ We must also reject Morris's second argument. Under the facts of this case as found by the trial court, we must affirm the trial court's holding reasonable suspicion existed to extend the duration and scope of the stop for a reasonable investigation of drug activity. Officer Vinesett testified he smelled marijuana as he approached the car, and after requesting Morris's license and registration, he learned Morris was not an authorized driver. *Cf. State v. Butler*, 353 S.C. 383, 390, 577 S.E.2d 498, 501 (Ct.App.2003) (finding that an officer's detection of the odor of alcohol during a traffic stop justified the extension of the stop based on the reasonable suspicion that open containers were located in the vehicle) (per curiam); *see also State v. Odom*, 376 S.C. 330, 335, 656 S.E.2d 748, 751 (Ct.App.2007) (indicating that the sight of Swisher Sweet cigars, the strong odor of marijuana, the defendant's admission he smoked marijuana earlier in the day, and the presence of a gun holster in the back seat amounted to reasonable suspicion of the existence of drugs). Upon stopping the Ford, moreover, Officer Vinesett had the authority to order Morris out of the car, and when he did so, he observed the hollow blunts and loose tobacco, which in his experience indicated drug use. *See Pichardo*, 367 S.C. at 98, 623 S.E.2d at 847–48 (providing that upon a lawful traffic stop, an officer may order the driver out of the vehicle, "request a driver's license and vehicle registration, run a computer check, and issue a citation"). Thus, Officer Vinesett properly gained reasonable suspicion Morris and Nichols were using drugs, and he was permitted to take reasonable steps to confirm or

dispel this suspicion. *See State v. Corley,* 383 S.C. 232, 241, 679 S.E.2d 187, 192 (Ct.App.2009) (providing that during a traffic stop, "the police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that the person is involved in criminal activity"; "[t]he scope and duration of [this investigative] detention must be strictly tied to and justified by the circumstances that rendered its initiation proper"; and normally, this permits an officer to attempt to obtain information confirming or dispelling the officer's suspicion), *aff'd as modified,* 392 S.C. 125, 708 S.E.2d 217 (2011). He did so by asking both Morris and Nichols a series of questions, receiving consent to search their persons, and calling in a drug dog.

## II. The Search

■ Morris next argues the trial court erred in declining to suppress the drug evidence as fruit of an illegal search. Morris does not contest Officer Vinesett's search of the passenger compartment, but he argues Officer Vinesett lacked probable cause to search the trunk. We disagree.

■ The Fourth Amendment prohibits unreasonable searches, and a warrantless search generally is unreasonable. *State v. Peters,* 271 S.C. 498, 501, 248 S.E.2d 475, 476 (1978). However, the ready mobility of and the lessened expectation of privacy in automobiles endorse an exception to that rule based upon probable cause. *State v. Cox,* 290 S.C. 489, 491, 351 S.E.2d 570, 571 (1986). A probable cause analysis involves the use of a fact-based, objective perspective that requires more than reasonable suspicion of criminal activity:

> Probable cause is a commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause to search exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place. The principal components of the determination of probable cause will be whether the events which occurred leading up to the search, viewed from the stand-

point of an objectively reasonable police officer, amount to probable cause.

*State v. Brown,* 389 S.C. 473, 482, 698 S.E.2d 811, 816 (Ct.App. 2010) (internal citations omitted).

 "The scope of a warrantless search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *State v. Perez,* 311 S.C. 542, 546, 430 S.E.2d 503, 505 (1993). Therefore, "[i]f probable cause justifies the [warrantless] search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *see also State v. Brannon,* 347 S.C. 85, 94, 552 S.E.2d 773, 777 (Ct.App.2001) (Anderson, J., concurring in result only) ("Under the automobile exception, if probable cause exists to justify the warrantless search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

In this case, the trial court made no separate rulings to support its finding of probable cause beyond those supporting its pronouncement of reasonable suspicion. The trial court simply stated, "He had probable cause to search." In light of the summary nature of this ruling, we must determine whether the same factual findings that supported the finding of reasonable suspicion also support a determination of probable cause. Emphasizing our deferential standard of review, we determine they do.

The trial court specifically found that in Officer Vinesett's experience blunts are often hollowed to accommodate the smoking of marijuana. Similarly, the loose tobacco in the car indicated the blunts were recently hollowed in the car. Considering these factors in conjunction with the background odor of marijuana, the circumstances are sufficient to warrant a reasonable and prudent person to believe Morris and Nichols possessed marijuana. Accordingly, the officers had probable cause to search anywhere in the vehicle where marijuana could be located. The trial court properly admitted the drug evidence discovered in the trunk.

## CONCLUSION

For the aforementioned reasons, the ruling of the trial court is

**AFFIRMED.**

FEW, C.J., and KONDUROS, J., concur.